CAROLINA WICKLUND, administratrix, *vs.* SAMUEL I. HOWARD.

Worcester.     October 3, 1910. — October 18, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.          ...

In an action by an administratrix against a general contractor for causing the death of the plaintiff's intestate while in the defendant's employ, it appeared that the defendant was engaged in taking down parts of the front wall of a building in order to change it, that the plaintiff's intestate was at work under a staging, that it was customary to lower large pieces of stone by a derrick and to drop small pieces of stone from the staging, and that the intestate's death was' caused by his being struck on the head by a stone dropped from the staging by a person assumed by the court to have been a superintendent, that the superintendent dropped this stone from the end of the staging five or six feet away from the place where the intestate had been at work, that before he dropped the stone he twice called to the intestate by name and told him to look out, that he was going to drop the stone, that both warnings were heard by the intestate, that when the second warning was given the intestate, who could not see the superintendent although the superintendent could see him, left his place of safety and ran out from under the staging just as the superintendent had dropped the stone over the edge of it and was struck by the stone, that the intestate's object was to reach a doorway which he thought was a place of greater safety, but that he said nothing and did nothing to notify the superintendent of his intended movement. *Held*, that, assuming that the intestate was in the exercise of due care, there

was no evidence of negligence on the part of the superintendent, who had no reason to anticipate that the intestate would leave the place where he was and attempt to run to the doorway.

TORT under the employers' liability act by the administratrix of the estate of Peter J. Wicklund, for the death and conscious suffering of the plaintiff's intestate, alleged to have been caused by the negligence of a superintendent of the defendant. Writ dated March 23, 1909.

In the Superior Court the case was tried before *Aiken,* C. J., who reported it for determination by this court.

The plaintiff's intestate was injured on February 17, 1909, and died from the injuries on March 4, 1909. The report contained the following statements of the Chief Justice:

"At the close of the evidence, I stated that I should submit the case to the jury and that if the jury found for the plaintiff I should set the verdict aside and order a verdict for the defendant and report the case for determination by the Supreme Judicial Court. The case was submitted to the jury, the jury returned a verdict in favor of the plaintiff and assessed damages in the sum of $275 on the first count and in the sum of $1,500 on the second count of the declaration. I thereupon directed the verdict of the jury to be set aside and ordered a verdict for the defendant.

"And now before entry of judgment upon the verdict I reserve and report the case to the Supreme Judicial Court. It is agreed that if upon the evidence reported herewith, the question of notice not being in issue, I was justified in ordering a verdict for the defendant, judgment is to be entered upon that verdict; otherwise judgment is to be entered for the plaintiff in the amounts found by the jury, with interest from the date of the verdict.

"Evidence material to this report, questions put by me to the jury and the jury's answers thereto, are reported herewith."

The facts which the plaintiff contended were shown by the evidence were stated in the plaintiff's brief as follows:

The defendant, who is a general contractor, was at the time of the accident engaged in changing the store front of a building on Mechanic Street in Worcester. One Lackstrom was in charge of this work. There were six men working under

Lackstrom.    Lackstrom gave all the orders, instructions and warnings to the men and could hire and discharge men.   Just before the accident, two of the men under Lackstrom were standing on the staging in front of the building, drilling holes in a capstone.   The capstone was a piece of granite sixteen inches square and five or six feet long.   The capstones were permanent parts of the building and served to hold up the brick work above the windows.   To take down a capstone, Lackstrom marked it off in small sections, the men then drilled and wedged off these sections, and each section so removed was immediately lowered by a derrick or a rope, and some smaller pieces were let down by hand, a man being sent down from the staging to receive them.   Very small pieces were thrown down.   The work on this building had been going on for about two weeks before the accident, but the plaintiff's intestate had not been working there for more than three days before the accident.   During that time he had been at work within the building sawing off iron beams.   A few minutes before the accident he and another man named Sampson were taken from their work within the building by Lackstrom and were told to rig up a derrick in front of the building. The derrick was rigged for the purpose of lowering to the sidewalk small sections of capstone as they were drilled and wedged off.   The sidewalk in front of the building was boarded in.    The enclosure thus made was forty feet long, about thirteen feet high and five or six feet wide.   Within this enclosure and extending from its east end to the middle of the enclosure was a staging.   The staging consisted of two or three eight inch planks placed along the front of the building about eight feet from the ground, on cross pieces extending from the wall of the building to the side of the enclosure.   The planks were lying loose on the cross pieces and had no fixed position.   The derrick extended up through the staging, the foot of the derrick rested on the sidewalk and the upper end leaned against the building.   Wicklund and Sampson were directed by Lackstrom to put a rope on the derrick.   Wicklund was on his knees under the staging tying the rope.   Sampson was standing upright facing Wicklund and looking toward the west end of the staging.   While Sampson and Wicklund were in that posi-

tion under the staging, Lackstrom, who had been standing on top of the staging while two of the men, Johnson and Lanz, drilled and wedged loose a section of the capstone, took the loose stone in his hands and carried it to the west end of the staging. He then got down on his knees and, calling Wicklund by his first name, told him to look out, that he was going to drop the stone. Sampson, who saw the stone below the staging, then called out to Wicklund that they were all right where they were. Lackstrom instead of dropping the stone repeated the warning, and as he did so let go of the stone. Wicklund upon hearing the second warning instantly jumped up, turned about and ran out into the open space beyond the west end of the staging and into a covered doorway. The falling stone struck Wicklund on the head as he was running, causing injuries from which he afterwards died. If Wicklund had not moved, the stone would have fallen about six feet from where Wicklund was on his knees tying the rope, and about eight feet from where Sampson was standing beyond Wicklund. Sampson and Wicklund could not see what the men were doing on the staging but Lackstrom could see distinctly the position in which both Sampson and Wicklund were before and at the time he dropped the stone. There was no particular place where stones were let down. There was evidence that this stone should have been let down by the derrick and that Lackstrom determined the method of lowering stones and gave all the instructions and warnings pertaining thereto.

*V. E. Runo,* for the plaintiff.

*F. F. Dresser,* for the defendant.

MORTON, J. We assume in favor of the plaintiff that Lackstrom was a superintendent and that the intestate, Wicklund, was in the exercise of due care. But we think that there was no evidence of negligence on the part of Lackstrom. It was not contended that the stone was dropped down through the staging on Wicklund as he was at work at the foot of the derrick. The account of the accident given by the plaintiff's witnesses negatived any such possible contention. It appeared that it was customary to lower large pieces of stone by a derrick, and to drop smaller pieces from the staging, and to give a warning when stones were to be lowered by the

derrick or dropped from the staging. The uncontradicted testimony showed that the stone which caused the injury was dropped by Lackstrom from the end of the staging five or six feet away from where Wicklund was at work, and that before Lackstrom dropped the stone he gave two warnings, both of which were heard by Wicklund. The testimony also showed that when the second warning was given Wicklund left the place of safety where he was and ran out from under the staging just as Lackstrom dropped the stone over the end of the staging. Wicklund's object was to reach a doorway which he thought a place of greater safety. But he said nothing and did nothing, though he heard the warning, to put Lackstrom on his guard, and Lackstrom had no reason to anticipate that Wicklund would leave the place where he was and "make a rush," as one of the witnesses described it, "for the doorway." We do not see therefore how Lackstrom can be said to have been negligent in dropping the stone as he did. Lackstrom testified that he looked under the staging before he dropped the stone, and saw Wicklund at the derrick, and that in answer to his warning Wicklund said "All right." The jury, however, might not have believed that. The question is whether upon the uncontroverted evidence the jury were warranted in finding that Lackstrom was negligent, and, as we have said, we do not think that they were. The mere fact that he dropped the stone from the staging instead of lowering it with the derrick could not be said under the circumstances to be of itself evidence of negligence.

*Judgment on the verdict.*